UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Nos. 04-22668-Civ-UUB
93-572-Cr-UUB

MARSHALL IVES,
    *Petitioner,*

vs.

UNITED STATES,
    *Respondent.*



**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF HIS OBJECTIONS TO REPORT & RECOMMENDATION DENYING MOTION TO VACATE CONVICTION AND SENTENCE UNDER 28 U.S.C. §2255**

**I.
THE MAGISTRATE JUDGE'S ERRONEOUS FINDINGS OF FACT AND CONCLUSIONS OF LAW REQUIRE PROBING *DE NOVO* REVIEW BY THE DISTRICT JUDGE**

**A.   Introduction**

The Report & Recommendation (Oct. 12, 2005), hereafter, "R & R," was predicated on materially incorrect factual assumptions and legal conclusions making the need for meaningful *de novo* review by the District Judge imperative. *See* 28 U.S.C. §636(b)("A judge. . . shall make a *de novo* determination of those portions of the report or specified *proposed* findings or recommendations to which objection is made.")(emphasis added). It is critical to a meaningful *de novo* review by the District Judge to consider the legal basis underlying petitioner's timely objections to the R & R.

**B.   Ineffective Assistance of Counsel (IAC)**

The gravaman of petitioner's §2255 claims relate to three distinct



WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

1

instances of ineffective assistance of counsel (IAC) which render the conviction and sentence illegal necessitating an evidentiary hearing and the grant of relief under §2255.

Each of these IAC claims, primarily: (1) Malman's actual conflict of interest exacerbated by his representation of petitioner in association with the Lehtinen law firm; (2) Malman's deficient performance under *Strickland* (pretrial, trial, pre-sentencing, and sentencing until he was granted leave to withdraw from the case); and, (3) Sharpstein's IAC at and before sentencing based on material omissions in his representation at this critical stage of the case.

Though Ives' direct appeal asserted, *inter alia*, IAC claims, it is well-settled that such claims are ill-suited for resolution on direct appeal "because there usually has been an insufficient opportunity to develop the record regarding the merits of these claims." *United States v. Camacho,* 40 F.3d 349, 355 (11th Cir. 1994) *overruled in part on other grounds by United States v. Sanchez,* 269 F.3d 1250 (11th Cir. 2001). This principle applies *a fortiori* because "evidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced." *Massarro v. United States,* 538 U.S. 500, 504-05 (2003)(affirming *Camacho* rule, *supra*).

Though the Magistrate Judge ruled that "the ineffective assistance/conflict of interest claim is not procedurally barred," R & R at 9, Judge Brown improperly ruled that petitioner's involuntary guilty plea claim— rooted in the same "ineffective assistance/conflict of interest" context— was defaulted. R & R at 18.[1]

---

[1] Adding to this irony is the government's contention on direct appeal that "Ives' claims of ineffective assistance of counsel may not be heard on direct appeal." *Sealed Brief of United States,* Case No. 96-5143-DD at 58.

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

2

### C. Government's Improper Withdrawal of USSG §5K1.1 Motion

The Magistrate Judge erroneously concluded that this claim was barred procedurally because it was disposed of by the Eleventh Circuit. However, in the appellate Court this claim was couched in terms of prosecutorial misconduct. In contrast, petitioner's §2255 claim in this respect presents a free-standing issue which is not dependent on the protections against governmental misconduct originating in the due process clause. The claim rises or falls on the proper construction of *Wade v. United States,* 504 U.S. 181, 185 (1992). Petitioner's §5K1.1 claim falls within the exception reserved for a government decision premised on unconstitutional motive.[2]

At a minimum, the District Judge must review this issue *de novo,* particularly with the benefit of argument establishing an exception to the government's otherwise broad discretion associated with the filing of a §5K1.1 motion.[3]

### D. The Magistrate Judge Erred Reversibly in Failing to Grant An Evidentiary Hearing on Petitioner's §2255 Claims

Plainly, petitioner met the threshold requirement under 28 U.S.C. §2255 requiring the government to show cause why the petition should not be granted.

---

[2] In this case, the government impermissibly sought to withdraw its previously filed §5K1.1 motion in retaliation for petitioner's exercise of constitutionally protected conduct by asserting specified constitutional claims before this Court.

[3] Whether, once, properly filed, the government is free to withdraw such motion is another variation of this claim that must be addressed on the merits.

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

3

This duty is coextensive with the habeas applicant's right to a hearing upon which to determine the issues and make findings of fact and conclusions of law:

> Unless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief, the court *shall* cause notice thereof to be served upon the United States Attorney, *grant a prompt hearing thereon,* determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. §2255 (emphasis added).

For this reason, and other compelling constitutional reasons plead herein, it is incumbent upon the District Judge to "receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. §636(b).[4]

---

[4] Similarly, by recommitting the matter to the magistrate judge the Court should grant petitioner the corollary right of limited discovery upon terms that are fair, just, and judicially expedient. *See Harris v Nelson,* 394 U.S. 286, 295 (1969). *See also* Rule 8, Rules Governing Section 2255 Cases in the United States District Courts (referring by analogy to Rule 8, Rules Governing Section 2254 Proceedings in United States District Courts citing *Townsend v Sain,* 372 U.S. 293, 312 (1963)("Where the facts are in dispute, the federal court in habeas corpus *must* hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing [in the trial court or collateral proceeding])." *Id.* (emphasis added).

In the case *sub judice,* it's manifestly evident on this record that the so-called *Garcia* hearing (June 12, 1995), conducted just two days prior to trial after an unwarranted passage of time attributable equally to the government, defense counsel and court, did not constitute— under any permissible calculus of constitutional interpretation— a "full and fair evidentiary hearing" and lies at the core of petitioner' as IAC conflict of interest claim.

The totality of facts controverted by petitioner warranted an evidentiary hearing to determine with finality and precision that version of events which best accords with reason and probability. Resolution of these disputed facts are outcome determinative with respect to the controlling law which would then apply.

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

4

## II.

## THE CONVICTION AND SENTENCE MUST BE VACATED BASED ON DENIAL OF PETITIONER'S SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL

### A. The R & R Was Based Upon Unwarranted Reliance on the Substantially Belated and Constitutionally Deficient *Garcia* Hearing Two Days Before Trial Commenced and the Erroneous Findings of the USCA in the Absence of an Adequate Evidentiary Record

#### 1. Background

As a threshold matter, the adversary process in this case was irreparably tainted by counsel for the government and defense, as well as the Court, which each bore coextensive responsibility for permitting Malman's representation to proceed for 6 months without any judicial inquiry despite the obvious burdens of his palpable conflict of interest, or more gratuitously, potential for conflict, which was apparent to counsel *and* the Court from the moment that Malman entered his temporary notice of appearance on behalf of Ives.[5]

---

[5]   (DE 365) (Oct. 6, 1994). Malman left the US Attorney's Office in this District and briefly practiced law in Philadelphia prior to returning to Miami to join the law firm headed by Dexter Lehtinen, the former US Attorney under whom Malman served as First Assistant US Attorney (DE 369)(Oct. 26, 1994).

Petitioner's first attorney, Fred Schwartz, Esq., entered an appearance at his initial appearance on December 9, 1993 (DE 30)(Dec. 9, 1993). Schwartz continued as Ives' defense counsel until August 27, 1994 (DE 326, 345).

**WEINTRAUB & PETRUZZI, LLC.**, 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

5

### 2. Trial Judge Harbors Grave Concerns Over Malman's Representation

Clearly, the District Judge harbored grave concerns about the propriety of Malman's representation from the outset. On May 8, 1998 the Court recalled "being concerned right off the bat that this [conflict] was going to be an issue." TR. At 13 (May 8, 1998).[6]

From January to May 1995, Malman served as Ives' defense lawyer "in protracted pre-trial proceedings concerning a variety of issues anticipated to arise in the RICO case"[7] but "Malman left Lehtinen's firm before trial commenced." *Id.* (record references omitted).[8]

---

[6] **The Court recounted** that "In October, Mr. Malman— I believe it was October of 1994— Mr. Malman expressed that he was coming into the case... He began in earnest the active representation in court of Mr. Ives but was actually retained sometime before that. **During all that period of time there was some concern expressed about Mr. Malman having been a member of the [US Attorney's] office.**" *Id.* at 11-12 (emphasis added).

[7] *See* Note 1, *supra* at 3.

[8] This is one of several materially inaccurate references to the tenure of Malman's association with the Lehtinen firm which imputes the firm's members conflicts to Malman, and Malman's conflicts to them, all presumptively prejudicial to Ives.

Malman's notice of appearance (DE 396)(Dec. 27, 1994)(*pro hac vice* motion granted by order dated January 3, 1995 (DE 402), for example, bore the imprimatur of the Lehtinen firm, and its myriad conflict-laden members, and reflected a clear legal relationship between Malman and the firm.

This significant relationship and its erroneous characterization in the records leading to the R & R cannot be permitted to go unchallenged.

Significantly, AUSA Troyer and Malman discussed the conflict issue amongst themselves[9] concurrently with Malman's entry of appearance and thereafter but each failed to notify the trial judge as to their constitutional concerns for a period of approximately 6 months when, after commencement of trial, Troyer brought this matter this matter up at a hearing on June 12, 1995 in what came to be referred to as the "*Garcia* hearing." It was only at that time that Troyer stated:

> *There's one last thing. One thing **I've never gotten around to we need to do**,* I believe, and that is— **I've discussed this with Mr. Malman a long time ago.** Mr. Malman I think it just needs to be put on the record— Mr. Malman did, of course, used to work for the Department of Justice. He was employed by the [DOJ] while this case was pending. He never supervised any aspect of this particular case, and, of course, it's entirely appropriate under the statute that he's allowed to be in this case as defense counsel.
>
> However, I think **it's crucial that the Court get an on-the-record waiver from Mr. Ives himself that he still wants Mr. Malman to represent him** knowing that situation.

TR at 60 (June 12, 1995)(emphasis added).

### C. Passage of 6 Months Before Judicial Inquiry On the Record Regarding petitioner's Sixth Amendment Right to Conflict-Free Representation

---

[9]   At the May 8, 1998 hearing, AUSA Troyer informed the Court that "there were a number of conversations between Mr. Malman and myself. But as with the things said by appellant's counsel [Bonner], **those weren't in the record either.** That was no secret to Mr. Ives or anybody in the Court, that Mr. Malman was once a member and supervisory member of our office. It was stated. *Eventually we did have a hearing. It was brought up in the hearing.*" *Id.* at 10 (emphasis added).

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

7

Throughout these proceedings, the trial and appellate Courts ignored the critical fact of what was memorialized on the record— merely anecdotal recollections of conversations between Malman and Troyer— of the obvious Sixth Amendment problems which inhered in Malman's representation from Day One. Still, Ives—who was never a party to pretrial "on-the-record" proceedings relative to the constitutional perils presented by Malman's representation— was *not* the subject of an adequate procedure mandated by *Holloway v. Arkansas*, 435 U.S. 475 (1978) until 6 months *after* Malman's representation began "in earnest."

At all previous stages of this case, these courts assumed— without record evidence— that *the defendant* himself[10] was personally and timely advised in open court as to the perils of conflict-laden representation.

Apart from the challenged adequacy of the so-called *Garcia* hearing at least 6 months *after* Malman's representation began "in earnest," the Court failed to discharge its *Holloway* duties at a time which would have ensured the benefits of its prophylactic purposes. *The Court's failure to timely inquire on the record and in defendant's presence into the palpable conflict engendered by Malman's representation materially compounded defense counsel's conflict of interest which must be deemed presumptively prejudicial. Cuyler v. Sullivan*, 446 335, 350 (1980).

### C.     Collusion Between Government & Defense Counsel

---

[10]    Petitioner's status as a former attorney, and clearly not one skilled in federal criminal practice and procedure, has no bearing on the constitutional imperatives at stake in this case.

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

8

Troyer's silence itself at the May 8th hearing perpetuated the myth that Ives was personally advised in the presence of his counsel that Malman's former status and the conflict was addressed *before any proceeding at which he was represented by Malman occurred.* In reliance upon the prosecutor's lack of candor to the Court, the District Judge mused that "I'm sure that [disclosure/resolution of the conflict] happened in Mag. Court." *Id.* at 16 (May 8, 1998).

Counsels' collusion not only materially mislead the Court in discharging its supervisory authority to ensure defendant's right to counsel unencumbered by conflict of interest, it resulted in a conviction tainted by Sixth Amendment violations.

### D. "Too Little Too Late"

Axiomatically, "When a conflict situation becomes apparent to the government, the government has a duty to bring the issue to the court's attention and, if necessary, move for disqualification of counsel." *United States v. Tatum,* 943 F.2d 370, 379 (4th Cir. 1991); *See United States v. Register,* 182 F.3d 820 (11th Cir. 1999); *See also United States v. McClain,* 823 F.2d 1457 (11th Cir. 1987). Apart from instances of multiple representation where the potential for attorney conflict is immediately evident to the court, the presiding judge's duty to conduct a conflict inquiry under *Holloway v. Arkansas,* 435 U.S. 475, 484-85 (1978) and Rule 44(c) is triggered only upon notice from counsel.[11] Here, the

---

[11] The Court's institutional obligation to ensure conflict-free representation is underscored by S. D. Fl. L. R. (Attorney Discipline) incorporating by reference Rule 4.1-7 of the Rules Regulating the Florida Bar ("Conflict of Interest; General Rule.").

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

9

conviction and sentence were the product of reversible error and had to have been noticed by the Court *sua sponte.*

Unquestionably, the nature and extent of collusion between Malman and Troyer deprived the Court of its supervisory authority pursuant to *Brownlee v. Haley,* 306 F.3d 1043, 1063 (11th Cir. 2002)(when court is aware or should reasonably be aware of a defense lawyer's potential conflict of interest, judge has a duty to so inform defendant and inquire as to defendant's preference in ameliorating it). Despite the trial judge's best efforts, the Court was unable to address this critical constitutional concern earlier in the case as *both counsel* shared responsibility— not only for trivializing the nature and extent of Malman's conflict of interest— but in materially misleading the Court on this critical issue:

> [T]he court must protect its independent interest in ensuring the integrity of the judicial system is preserved and that trials are conducted within ethical standards.

*United States v. Ross,* 33 F.3d 1507, 1523 (11th Cir. 1994).[12]

Nowhere in the record, apart from the *Garcia* hearing just two days before trial commenced, did Troyer and/or Malman discharge their respective professional duties to notify the Court and client of the conflict. Plainly, Troyer mislead this Court on May 8, 1998 through his response to the following comment by the Court: "Well, am I imagining this or did we not discuss this with

---

[12]   "An attorney's ethical duty to advance the interest of the client is limited by an equally solemn duty to comply with... standards of professional conduct." *Nix v Whiteside,* 475 U.S. 157, 168 (1986); *Malutea v Suzuki Mtr. Co,* 987 F.2d 1536, 1546 (11th Cir. 1993)(same).

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

10

Mr. Ives from time to time also?" TR at 12 (May 8, 1998) to which the prosecutor falsely stated "*We* did. We did not have a hearing, a full blown hearing, I don't believe, until shortly before the trial." *Id.* at 12 (emphasis added).

Troyer's affirmative representation to the Court on May 8th that the he, Malman, *and the Court* "discuss[ed] this *with Mr. Ives*" is belied by the record and Troyer's admission at the *Garcia* hearing on June 12, 1995 when he stated:

> *One thing I've never gotten around to* we need to do, I believe. . . and I think it's crucial that the Court get an on-the-record waiver from Mr. Ives himself that he still wants Mr. Malman to represent him knowing that situation.

TR at 6 (June 12, 1995)(emphasis added).

If, as Troyer asserted at the later hearing, Ives was *personally and officially* informed of Malman's conflict "from time to time" prior to the June 12, 1995 hearing, it's clear that that was a materially false statement because he told the Court at the *Garcia* hearing that he had "never gotten around" to officially and on the record notifying petitioner that his Sixth Amendment rights were or may be compromised by Malman's representation.

More critically, the R & R proceeded on assumptions and anecdotal recollections by the trial court which, in retrospect, were plainly ridden with self-doubt as to its accuracy.

In defending against petitioner's §2255, the government failed to produce any evidence memorializing by letter or otherwise that Malman's conflict was communicated to petitioner, that is, until the issue was raised 2 days before trial, fully more than 8 months since Malman began work for Ives "in earnest" and 6

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

11

months after Malman *and* the Lehtinen firm appeared as counsel of record in this case.[13]

### D. The *Garcia* Hearing

The totality of circumstances adduced at the June 12th hearing failed to satisfy both the demands of Fifth Amendment due process and Sixth Amendment right to counsel. Petitioner's statements at hearing made it obvious that his responses to the Court were the product of *Malman's* self-serving interests to which the client's interests were subordinated.

Far from satisfying the test enunciated in *Garcia*, petitioner's purported waiver was plainly *not* freely and voluntarily made but instead represented, at best, "Mere assent in response to a series of questions from the bench" which clearly did not "constitute an adequate waiver." 517 F.2d at 278.[14]

---

[13] The Court previously observed that "Ives had been represented by Malman for nearly a year." Order Denying Motion to Withdraw Plea (Aug. 20, 1996).

[14] Petitioner's statements at hearing were made in reliance upon the truth of representations made collectively by Troyer and Malman. His purported waiver was punctuated by "hesitation" and reluctance. R & R at 6. Moreover, this waiver was plainly made for *Malman's* benefit, not his client. Malman sucked up to the Court and government, preoccupied with negating *his* potential commission of a criminal act in violation of 18 U.S.C. §207 rather than upholding petitioner's cherished Sixth Amendment rights. Malman told the Court: "... *I just want to make sure on the part of the government* that *they* don't perceive a conflict, because *there's nothing that I would ever do* with Mr. Olarte-Morales as a defense lawyer which would not affect my relationship with him as a government lawyer." R & R at 5 (emphasis added).

The extent to which the trial court accepted Troyer's representations ignored their inherent limitations and qualification, *e.g.*, Asked by the Court whether Malman could exercise a "complete and unfettered defense on behalf of Marshall Ives," Troyer stated only that "That's correct, as far as I know. I don't know what he's trying to do with Mr. Olarte." R & R at 5.

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

12

Critically, a **waiver** of conflict-laden representation **must be established by clear, unequivocal, and unambiguous language.** *United States v. Rodriguez,* 982 F.2d 474 (11th Cir. 1993); *United States v. Petz,* 764 F.2d 1390 (11th Cir. 1985)(same). On this record, no permissible calculus of constitutional interpretation allows such an inference to be drawn.

Ives' responses, moreover, were "voluntary" only to the extent that the factors upon which he relied were *not* sourced to Malman. At hearing, it was evident that AUSA Troyer and Malman engaged in a ritualistic 'good 'ole boy' exchange to promote the appearance of justice while actually undermining it. That Troyer failed to initiate this proceeding until the very eve of trial—despite his misleading or false assurances to the Court that Ives *was* notified of the conflict "from time to time" before that— permitted his former friend and colleague *carte blanche* to earn a large fee during the entire case: pretrial, plea, cooperation, and presentence process without judicial accountability or Sixth Amendment scrutiny.

An evidentiary hearing is necessary to constitute a "full and fair opportunity to litigate" the validity of Ives' purported waiver of conflict. And once the conflict tainted representation received the court's imprimatur at the *Garcia* hearing, Malman counseled petitioner to terminate the trial then in progress, waive whatever vestiges of constitutional rights petitioner retained at that time, and plead guilty to offense conduct left largely undefined for penalty purposes.

The Magistrate Judge's ratification of the propriety of Malman's representation— burdened by palpable conflict, evidence of which assuredly

**WEINTRAUB & PETRUZZI, LLC.**, 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

13

represents merely the "tip of the iceberg,"— fails to conform with the probing inquiries mandated by *Garcia* and its rich progeny.

*Garcia,* for example, made it abundantly and unambiguously clear that the dangers inherent in attorney conflicts require extraordinary and searching scrutiny to ensure defendant's Sixth Amendment rights and to promote confidence in the judiciary itself.

> Most significantly, the court should seek to elicit a narrative response from each defendant . . . of his attorney's possible conflict of interest and the **potential perils of such a conflict**, that he has **discussed the matter** with his attorney or if he wishes with **outside counsel**. . .

517 F.2d at 278 (emphasis added). The only "outside counsel" with whom Malman's conflict was then discussed was counsel for the government— hardly the kind of "independent" legal advice and counsel unburdened by an interest in the proceeding.

On this basis alone, the R & R must be rejected and the conviction and sentence vacated.

### III.

### Government's Improper Withdrawal of USSG §5K1.1 Motion

The claim rises or falls on the proper construction of *Wade v. United States,* 504 U.S. 181, 185 (1992) and raises significant questions relating to separation of powers[15], an issue at the core of the discredited Guidelines and the prosecution's manipulation of them. *See United States v. Fuentes,* 107 F.3d

---

[15] "Once the government has filed an appropriate motion, the authority returns to the district court." *United States v Carey,* 382 F.3d 387 (3rd Cir. 2004).

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

14

1515 (11thy Cir. 1997). Petitioner's §5K1.1 claim falls within the exception reserved for a government decision premised on unconstitutional motive.[16]

In this case, the unconstitutional motive was petitioner's exercise of conduct protected by the First, Fifth, and Sixth Amendments. The trial court improvidently granted leave for the government to withdraw the motion which, as set forth in detail in earlier pleadings, reflects upon a defendant's *past* substantial assistance, even in extreme cases where, subsequent to plea but prior to sentencing the defendant absconds, *e.g., United States v. Moore,* 362 F.3d 129, 133 (1st Cir. 2004).

In summary as to this point, the §5K1.1 motion earned by petitioner had no bearing in the first instance whether or to what extent it should be granted. The Court erred reversibly in this regard.

### III.
### INEFFECTIVE ASSISTANCE OF COUNSEL IN CONNECTION WITH SENTENCING

Sentencing is a critical stage of the process which guaranteed petitioner the right to effective assistance of counsel. *See e.g., United States v. Ruiz-Rodriguez,* 277 F.3d 1281, 1291 (11th Cir. 2002). The Magistrate Judge erred reversibly in denying relief on this ground, particularly with regard to defense counsel's failure to seek the benefit of the safety valve and a proper construction of relevant conduct with respect to drug quantity.

---

[16] In this case, the government impermissibly sought to withdraw its previously filed §5K1.1 motion in retaliation for petitioner's exercise of constitutionally protected conduct by asserting specified constitutional claims before this Court.

For many of the same reasons associated with the government's improper withdrawal, with leave of court, of its Section 5K1.1 motion, defense counsel (Sharpstein) rendered constitutionally deficient representation under *Strickland* based on his failure to seek a mitigated guideline sentence pursuant to the safety valve, USSG §§ 2D1.1(b)(6), 5C1.2, and 18 U.S.C. §3553(e). Again, it's the court, not the prosecutor, which determines this issue. *United States v. Figueroa,* 199 F.3d 1281 (11th Cir. 2000).

But for counsel's failure to seek such relief, the sentence would have been lower resulting in the kind of prejudice embraced by *Glover v. United States*, 121 S. Ct. 696 (2001). The government has not demonstrated harmless error here beyond a reasonable doubt.[17]

And finally, sentencing counsel's ultimate failure to dispute the quantity of drugs driving the Guidelines fell measurably below professional standards of reasonableness. It's settled that prior to imputing disputed drug quantity to a defendant on relevant conduct grounds, the government bears the burden of proving both the "reasonable foreseeability" and "in furtherance of" prongs of Section 1B1.3. *See also United States v. Reese,* 67 F.3d 902 (11th Cir. 1995).[18]

---

[17] It is the Court, not the government, that grants or denies a motion under USSG §5K1.1 and "safety valve." In hindsight, Ives' counsel would have served him better by arguing the merits of his cooperation at sentencing rather than moving to withdraw the plea because of an unenthusiastic governmental sentence recommendation, just one of myriad factors to be considered by the Court, including the safety valve.

[18] Though the subject of some debate in this case, the defendant's gratuitous statement in this regard at the plea colloquy did not relieve the court, on proper motion, from reaching an independent determination of drug quantity applying the facts to governing law. Had counsel objected to drug quantity, the result of the

WEINTRAUB & PETRUZZI, LLC., 100 N. BISCAYNE BLVD., SUITE 1100, MIAMI, FLORIDA 33132 ● (305) 373-6773; FACSIMILE: (305) 373-3832

16

## CONCLUSION

For these reasons, the R & R should be rejected and petitioner's conviction and sentence vacated.

Respectfully submitted,

**WEINTRAUB & PETRUZZI**
*Sentencing & Post-Conviction Strategies*
*Counsel for Petitioner Ives*
100 N. Biscayne Blvd. #1100
Miami, FL. 33132
Tel. 305/373-6773
Fax 305/373-3832

By: _____
PAUL D. PETRUZZI, ESQ.
FL. Bar No. 0982059


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 29, 2005, a true and correct copy of the foregoing was furnished by mail to AUSA Benjamin Greenberg, 99 N.E. 4th Street, Miami, Florida 33132.

By: _____
PAUL D. PETRUZZI, ESQ.
Attorney for Defendant

---

proceeding would have been different.